# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PAMELA K. L.,[1]

       Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

CIVIL ACTION

No. 18-1094-JWL

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the last initial of the Plaintiff.

Plaintiff argues that the ALJ "failed to follow the treating physician rule, [by] giving the greatest weight to non-treating, non-examining physicians" (Pl. Br. 22) (bolding omitted), and by erroneously discounting the opinions of a treating psychologist, Dr. Dowd, and an examining psychologist, Dr. Schwartz. Id. at 24-28.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's]

2

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.

3

Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issue as presented in Plaintiff's Brief.

## II.     Standard for Evaluating Medical Opinions

As Plaintiff's Brief suggests, at the time of the decision in this case (February 22, 2017), the Commissioner applied the "treating physician rule" when weighing medical opinions in the record evidence. (Pl. Br. 23) (citing 20 C.F.R. § 404.1527 (2016);[2] Soc. Sec. Ruling (SSR) 96-2p; and Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (discussing SSR 96-2p)). For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[3]

---

[2] The court notes that the regulations and rulings regarding weighing medical evidence changed effective March 27, 2017. The decision at issue was decided February 22, 2017. (R. 38). Therefore, the ALJ's decision was based on the regulations in effect on February 22, 2017 and the court's review will be based on those regulations.

[3]The regulations defined three types of "acceptable medical sources:"
 "Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. § 404.1502 (2016).
 "Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
 "Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

4

that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. <u>Id.</u> § 404.1527(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2018). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the

5

Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2018) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins, 350 F.3d at 1300-01 (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight she gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, [s]he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**III.    The ALJ's Findings Regarding Dr. Dowd's and Dr. Schwartz's Opinions**

The ALJ noted that Plaintiff "was referred for a psychological consultative evaluation on May 21, 2015 with Michael Schwartz, Ph.D." (R. 29), who also made a second evaluation on October 4, 2015. (R. 30). The ALJ summarized Dr. Schwartz's report of those evaluations, noting that Dr. Schwartz had administered psychological testing to Plaintiff including the Wechsler Adult Intelligence Scale-IV (WAIS-IV), the Wechsler Memory Scale-IV (WMS-IV), and the Color Trails Test (CTT). Id. The ALJ accorded little weight to Dr. Schwartz's opinions because they are not consistent with his objective findings and are not consistent with Plaintiff's reports of abilities (R. 33); because Dr. Schwartz reported that Plaintiff had significant cognitive issues and memory lapses but described her as an "extremely good historian;" because although Plaintiff's IQ scores were variable, there was no indication her memory deficits were so low as to preclude all work; and while Dr. Schwartz found it hard for her to leave her house, the record indicates she shops, attends medical appointments, and attends church. Id. at 34.

The ALJ also summarized and weighed Dr. Dowd's submissions in the record. She noted that Dr. Dowd "submitted a letter dated January 17, 2015 documenting that she saw the claimant from February 2013 through July 2013," and diagnosed "amnestic

7

disorder not otherwise specified, rule-out dissociative disorder not otherwise specified, and a Global Assessment of Functioning (GAF) score of 55." (R. 34). She noted that Dr. Dowd "submitted two medical source statements dated January 17, 2015 - one for the claimant's physical limitations and the second on the claimant's mental limitations." Id. She noted that "Dr. Dowd submitted a third [letter] statement, dated November 26, 2016." Id. at 35. The ALJ recognized that when "a treating source's medical opinion is well supported and consistent with the evidence in the case record, it must be given controlling weight," but overall she accorded Dr. Dowd's opinions no weight. Id. at 34.

The ALJ accorded little to no weight to Dr. Dowd's mental medical source statement because "Dr. Dowd specifically noted on the form that the ratings were based on reports from the claimant and her spouse," the "marked limitations opined … are inconsistent with the GAF score assessed at 55," id., and Dr. Dowd "last saw the claimant in July 2013 - almost 18 months prior to the completion of the source statement," suggesting her opinion was not based on current conditions. Id. at 35. The ALJ gave no weight to Dr. Dowd's opinion in the third statement that Plaintiff's "episodes are probably not emotional but physiological and appear to have taken her ability to function in the workplace away" because her treatment of Plaintiff was so long ago that it will not support this new assessment. Id.

IV. **Analysis**

   A. **Dr. Dowd's Opinions**

The court finds no error in the ALJ's evaluation of these medical opinions. The regulations do not require that a treating source opinion must invariably be accorded

8

greater weight than the other medical opinions in the record. Rather, it must be provided a deferential evaluation, and that is what the ALJ did here, recognizing the proper legal standard and recognizing that a treating source opinion, in the appropriate circumstances might be accorded controlling weight. Then, she provided specific, legitimate reasons to discount the treating source opinion of Dr. Dowd, and those reasons are supported by the record evidence.

Plaintiff argues that the GAF score assessed by Dr. Dowd appeared "[o]n a single, hand-written progress note dated February 1, 2013," that the Tenth Circuit holds GAF scores as suspect, that the Commissioner has declined to endorse the use of GAF scores in its disability programs, and that an ALJ's decision must consider the entire record not an isolated GAF score. (Pl. Br. 24-25). Plaintiff is correct so far as her argument goes, but that does not preclude the use of which the ALJ made the GAF score in this case. The "single, hand-written progress note dated February 1, 2013," was the only progress note Dr. Dowd provided the agency in response to the original records request, and it was attached to a letter from Dr. Dowd dated January 17, 2015 and explaining that the record was her "handwritten intake notes" and that she had provided therapy to Plaintiff for eleven specific sessions in 2013, but was unable to provide progress notes because of a "serious computer malfunction" wherein she had "lost records for about two years." (R. 624). Nonetheless, Dr. Dowd "report[ed] on the time period that [Plaintiff] spent in therapy with me <u>to the best of my memory and the records from billing</u>," and also provided opinions in the form of medical source statements dated January 17, 2015, which was a year and a half after her last reported therapy session on July 11, 2013.

Compare (R. 624) (emphasis added) with (R. 629-35).  While the GAF score appeared in only a single handwritten note, it was the only contemporaneous treatment note provided by Dr. Dowd upon which the ALJ could base her decision.[4]

Dr. Dowd assessed Plaintiff with "Marked" limitations in six out of twenty mental functional abilities.  (R. 632-34).  And she used the GAF score, despite the view of the Tenth Circuit or of the Social Security Administration, and assessed Plaintiff with a GAF score of 55 in her intake notes.  (R. 626).  The American Psychiatric Association explains that GAF scores in the range of 51-60 indicate "**Moderate symptoms ... OR moderate difficulty in social, occupational, or school functioning.**"  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. text revision 2000) (emphasis in original).  As the ALJ found, marked limitations in 30% of Plaintiff's mental functional abilities is inconsistent with a GAF score indicating only moderate symptoms or moderate functioning.

Plaintiff's argument that "the ALJ simultaneously rejects Dr. Dowd's opinion, but then accepts a subjective snapshot GAF score as being representative of Plaintiff's overall ability to work on a regular and sustained basis in violation of regulations" (Pl. Br. 25), is without merit.  The ALJ used this reason as one of four bases to discount Dr. Dowd's opinions, but she did not accept Dr. Dowd's GAF score as being representative

---

[4] Along with the third (letter) statement provided by Dr. Dowd, Plaintiff's counsel also submitted what appears to be a progress note of an office visit by Plaintiff to Dr. Dowd, dated "04/27/2013."  (R. 902, 905).  This progress note does not contain a GAF score.  Moreover, Dr. Dowd's letter does not refer to this progress note, and the note is not about one of the eleven sessions specifically mentioned in Dr. Dowd's letter dated January 17, 2015.  (R. 624).

of Plaintiff's overall ability to work on a regular and sustained basis.  She afforded Dr. Dowd's opinions, including her GAF score, little to no weight, and there is no discussion of any GAF score used to support her RFC assessment finding that Plaintiff is able to perform a range of light work.

The court notes that Plaintiff argues the ALJ discounted Dr. Dowd's GAF "observations because her 'ratings were based on reports from the claimant and her spouse,' rather than on any inconsistency with the record." (Pl. Br. 25).  This argument reveals Plaintiff's misunderstanding of the ALJ's decision.  Here are the ALJ's findings in this regard:

> On the mental source statement, Dr. Dowd gave the claimant a rating in the marked range for the ability to learn work procedures; understand and remember detailed instructions; and moderate limitation in the ability to understand and remember simple instructions.  Additional marked ratings were offered for the ability to carry out complex tasks; maintain attention and concentration; and maintain a regular schedule (Exhibit 11F/6-8 [(R. 632-34)]). These ratings are given little to no weight.
>
> Dr. Dowd specifically noted on the form that the ratings were based on reports from the claimant and her spouse (Exhibit 11F/6 [(R. 632)]). Further, the marked limitations opined by Dr. Dowd are inconsistent with the GAF score assessed at 55 (Exhibit 10F/5 [(R. 626)]).  Finally, Dr. Dowd indicated that she last saw the claimant in July 2013 - almost 18 months prior to the completion of the source statement.  This suggests her knowledge of the claimant's current functioning was not up to date.

(R. 34).  In context, it is clear the ALJ was evaluating Dr. Dowd's opinions presented in her mental medical source statement.  The first paragraph quoted above summarizes Dr. Dowd's opinions on the form regarding Plaintiff's mental limitations.  The second paragraph relates the ALJ's reasons for according those limitations little to no weight.  The first reason was that Dr. Dowd stated the limitations she opined were based on

11

reports of Plaintiff and her spouse. This was not a statement that Dr. Dowd's GAF score was based on reports from Plaintiff and her spouse. As cited in the portion quoted above, Dr. Dowd's GAF score of 55 appears in Ex. 10F/5 (R. 626). Dr. Dowd's notation that her limitations are based on information from Plaintiff and her spouse appears in Dr. Dowd's handwritten note on her "Mental Capacity Assessment" form in Ex. 11F/6 (R. 632). It has nothing to do with the GAF score except that, as the ALJ found, the GAF score assessed by Dr. Dowd in Exhibit 10F and suggesting moderate limitations is inconsistent with the marked mental limitations opined by Dr. Dowd in Exhibit 11F.

Finally, Plaintiff's argument that "[t]he ALJ's failure to credit Dr. Dowd's opinion because of a lapse in treatment is not supported by substantial evidence where the ALJ does not take into account Plaintiff's inability to obtain treatment due to her unemployment and loss of insurance" is also without merit as demonstrated by the quotation above. The ALJ simply did not discount Dr. Dowd's opinion because of a lapse of treatment. Rather, her third reason to discount the opinion, as quoted above, was because Dr. Dowd did not formulate her opinion until a year and a half after she last treated Plaintiff. Moreover, she formulated that opinion without the benefit of the lost contemporaneous progress notes. Plaintiff has shown no error in the ALJ's reasons for discounting Dr. Dowd's opinions.

### B. Dr. Schwartz's Opinions

Plaintiff's allegations of error regarding the bases for discounting Dr. Schwartz's opinions also misunderstands the decision. She argues, contrary to the ALJ's finding, that Dr. Schwartz's opinions are <u>not</u> inconsistent with his objective findings or with

Plaintiff's reports. (Pl. Br. 26-28). Her argument mostly ignores the reasons given by the ALJ to discount Dr. Schwartz's opinions, and relies primarily on an explanation how, in her view, there is evidence in Dr. Schwartz's report and elsewhere in the record which is consistent with Dr. Schwartz's opinion. Id. However, the standard for judicial review of a decision of the Commissioner is whether that decision is supported by substantial record evidence, not whether a claimant can point to record evidence which supports a different conclusion. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

That inquiry must begin with the Commissioner's final decision. As the ALJ noted, Plaintiff "reported an extremely limited range of function regarding daily living tasks during her examination" with Dr. Schwartz on May 21, 2015, but just four months earlier, "she reported that she was independent in these areas." (R. 34). Here is Dr. Schwartz's report in this regard:

> Picture of her day: She generally stays home. She does not do any coking [sic] because she leaves things on the stove and in the oven. She states she just follows her husband around to work on things. She just goes out there and sits and watches him. Her husband has to remind her to do her personal hygiene. She cannot handle any money because she just forgets.

(R. 836). In her function report dated January 13, 2015, Plaintiff checked a box that indicated "**NO PROBLEM**" with personal hygiene. (R. 260). She indicated she cooks

13

"small easy meals" three to four times a week and uses the crockpot a lot. Id. at 261. She stated, "I can do house work I just have to sit down frequently." Id. She reported that she goes outside two or three times a day, shops in stores to buy groceries, and stated, "I try to walk around the block at least 3 to 4 x week." Id., 262. She reported that she goes to "church and family functions" on a regular basis. Id., 263. Although Plaintiff's function report also indicates limitations in her abilities, the picture presented in Dr. Schwartz's report is inconsistent with that presented in Plaintiff's function report.

Plaintiff argues that the ALJ erred in using "Dr. Schwartz's observation that Plaintiff is an 'extremely good historian,' as a basis for inconsistency," thereby "suggesting that Plaintiff's ability to provide a history means she does not suffer from blackouts." (Pl. Br. 27) (quoting R. 34). But, the ALJ was not implying that being a good historian precluded Plaintiff's blackouts. Rather, he was pointing out the inconsistency between Dr. Schwartz's finding that Plaintiff's "form and flow of thought was emotional and dramatic but she was an extremely good historian" (R. 838), and his findings of "serious to severe cognitive impairment" and "severe memory lapses." (R. 841). Significant cognitive problems and memory lapses is inconsistent with the ability to be "an extremely good historian," yet Dr. Schwartz made these inconsistent findings.

Plaintiff argues that the ALJ suggested "Plaintiff was capable of functioning because 'she is able to leave her home to attend medical appointments, shop, and attend church.'" (Pl. Br. 27-28) (quoting R. 34). However, once again Plaintiff's argument misunderstands the ALJ's point. The ALJ was pointing to Dr. Schwartz's finding in the report of his second evaluation that Plaintiff "is very hypervigilant and avoidant and does

14

not want to leave the house" (R. 855), and noted that finding is inconsistent with the record evidence that Plaintiff "is able to leave her home to attend medical appointments, shop, and attend church." (R. 34). This inconsistency is one factor suggesting Plaintiff is able to function better than she alleges and better than Dr. Schwartz opined, but it is not the only factor on which the ALJ relied in assessing Plaintiff's RFC. She discussed that assessment extensively in her decision (R. 25-36), and other than the medical opinions of Dr. Dowd and Dr. Schwartz, Plaintiff does not allege error in that assessment.

Plaintiff has shown no error in the ALJ's evaluation of the medical opinions of Dr. Dowd and Dr. Schwartz.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated December 19, 2018, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
